UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE et al., <br><br> Defendants. | Civil Action No. 25-3559 (TJK) |

**MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Background ......................................................................................................... 1

Legal Standards .................................................................................................. 2

Argument ............................................................................................................ 3

    I.        The FBI's Glomar Response Pursuant to Exemptions 6 and 7(C) was Proper. ...... 3

          A.      Glomar Under Exemptions 6 and 7(C) Generally. ..................................... 3

          B.      Any Responsive Records, if they Existed, Were Compiled for Law Enforcement Purposes. ............................................................................. 6

          C.      The FBI Appropriately Refused to Confirm or Deny the Existence of Any Recordings Under Exemptions 6 and 7(C). .............................................. 7

    II.       The FBI's Glomar Response Pursuant to Exemption 7(E) was Proper. ............... 13

Conclusion ....................................................................................................... 15

The Department of Justice, along with its component the Federal Bureau of Investigation ("FBI") (collectively "Defendants"), respectfully move the Court for an order granting summary judgment in their favor in this Freedom of Information Act ("FOIA") case.

Plaintiff seeks audio and video of an alleged encounter that occurred in September 2024 between Tom Homan and undercover FBI agents. As explained below, the FBI can neither confirm nor deny the existence of any responsive records. Revealing whether or not such information exists would amount to an unwarranted invasion of Homan's personal privacy because it is well settled that requests under FOIA concerning whether a third party is involved in a law enforcement investigation, and the extent of any such involvement, would implicate the individual's privacy interests. Thus, the FBI appropriately refused to confirm or deny the existence of any responsive records under FOIA exemptions 6 and 7(C). Moreover, revealing the existence of any audio or video would reveal non-public information about FBI surveillance techniques which criminals could use to modify their behavior to avoid FBI detection. Accordingly, the FBI appropriately refused to confirm or deny the existence of any audio or video under Exemption 7(E).

## BACKGROUND

On September 22, 2025 Plaintiff Democracy Forward Foundation submitted two FOIA requests to the FBI. Declaration of Amie Napier ¶ 5 ("Napier Decl."). The first request sought "the video recording of the meeting on or around September 20, 2024 in Texas between undercover FBI agents and Tom Homan," and the second request sought "any recording (either video or audio) of the meeting on or around September 20, 2024 in Texas between undercover FBI agents and Tom Homan." *Id*. Tom Homan currently serves as the White House Border Czar (see Executive Office of the President, Annual Report to Congress on White House Office Personnel, at 4 (Jul. 1, 2025)), but in September 2024 Homan was a private citizen. Three days after submitting the

request, Plaintiff sought expedited processing.  Napier Decl. ¶ 5.  On October 6, 2026, after the FBI constructively denied Plaintiff's request for expedited processing, Plaintiff filed suit alleging that the FBI failed to grant expedited processing in violation of FOIA.  Compl. ¶¶ 23-24 (ECF No. 1).  Plaintiff amended its complaint on October 22, 2025, to add the underlying FOIA request to its claims.  Am. Compl. ¶¶ 23-24 (ECF No. 5).

In a letter dated December 2, 2025, the FBI denied Plaintiff's FOIA request issuing a *Glomar* response.  Napier Decl. ¶ 5.  A *Glomar* response allows the Government to "refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception."  *Wolf* v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).  Accordingly, the FBI advised Plaintiff that the FBI would neither confirm nor deny the existence of the requested records pertaining to Homan, a third party, pursuant to FOIA Exemptions 6 and 7(C) because the mere acknowledgement of the existence of FBI records could reasonably be expected to constitute an unwarranted invasion of Homan's personal privacy interest.  Napier Decl. ¶ 10.  The FBI also has since determined that the *Glomar* response was proper under Exemption 7(E) because acknowledging whether or not responsive  records exist would reveal information about FBI surveillance techniques that are not publicly known.  *Id.* ¶ 26.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  The party seeking summary judgment must

demonstrate the absence of a genuine issue of material fact.  *Id.*  Once the moving party has met its burden, the nonmoving part may not rest upon the mere allegations or denials of his pleading but must instead establish more than "the mere existence of a scintilla of evidence" in support of his position.  *Id.*  Thus, summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]."  *Id.*  When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in a light most favorable to the requester, that there is no genuine issue of material fact as to the agency's compliance with FOIA.  *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994). The court may award summary judgment based solely upon the information provided in affidavits or declarations when those affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail… and are not controverted by either contrary evidence in the record, nor by evidence of agency bad faith."  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (*quoting Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents."  *Brown v. Dep't of Just.,* 742 F. Supp. 2d 126, 129 (D.D.C. 2010)

## ARGUMENT

### I.    The FBI's Glomar Response Pursuant to Exemptions 6 and 7(C) was Proper.

#### A.    Glomar Under Exemptions 6 and 7(C) Generally.

An agency may issue a *Glomar* response, "refusing to confirm or deny its possession of responsive documents," when "merely acknowledging the existence of responsive records would

- 3 -

itself cause harm cognizable under a FOIA exception." *PETA v. Nat'l Institutes of Health, Dept. of Health & Human Services*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf*, 473 F.3d at 374). "A *Glomar* response is valid 'if the fact of the existence or nonexistence of agency records falls within a FOIA exemption.'" *PETA*, 745 F.3d at 540 (quoting *Wolf,* 473 F.3d at 374). To determine whether a *Glomar* response "fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Id.* An agency issuing a *Glomar* response must explain why it cannot confirm or deny the existence of certain records or categories of records. *James Madison Project v. Dep't of Just.*, 208 F. Supp. 3d 265, 283 (D.D.C. 2016). If a *Glomar* response is justified, "the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *People for the Ethical Treatment of Animals*, 745 F.3d at 540. "An agency waives any right to make a *Glomar* response by disclosing whether responsive records exist." *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 815 (D.C. Cir. 2021).

The Court should afford "substantial weight" to the agencies' determinations to assert *Glomar* responses. *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 89 (D.D.C. 2016). Ultimately, the government can establish the appropriateness of the *Glomar* response by demonstrating that it is "logical" or "plausible." *Wolf*, 473 F.3d at 375.

FOIA Exemption 6 exempts from disclosure information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted Exemption 6 broadly, making clear that the term "similar files" encompasses any "information which applies to a particular individual." *Dep't of Just v. Washington Post Co*., 456 U.S. 595, 602 (1982*); see also New York*

- 4 -

*Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (finding voice tapes from the shuttle Challenger to be "similar files").

The plaintiff bears the burden of establishing that disclosure of personal information would serve a cognizable public interest. *Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987). The "only relevant public interest to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government." *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal citation and quotation marks omitted). The "simple invocation of a legitimate public interest … cannot itself justify the release of personal information. Rather, a court must first ascertain whether that interest would be served by disclosure." *Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991); *see also Carter*, 830 F.2d at 391, 392 n.13 (establishing public interest is the requester's burden); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (stating that, with respect to privacy concerns, the requesting party must show a "sufficient reason for the disclosure").

In addition, "Exemption 7(C), the law enforcement counterpart to Exemption 6, protects against the disclosure of 'records or information compiled for law enforcement purposes' to the extent that such disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 56 (D.D.C. 2007) (quoting 5 U.S.C. § 552(b)(7)(C)). As with Exemption 6, Exemption 7(C) "call[s] for a balancing of the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *McCutchen v. United States Dep't of Health & Human Servs.*, 30 F.3d 183, 185 (D.C. Cir. 1994); *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992); *Favish*, 489 U.S. at 776–80. However, Exemption 7(C) is

broader than Exemption 6. *Favish*, 489 U.S. at 756. "First, whereas Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' the adverb 'clearly' is omitted from Exemption 7(C)" and "whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." *Id*. (quoting 5 U.S.C. §§ 552(b)(6), (7)(C)).

> **B.      Any Responsive Records, if they Existed, Were Compiled for Law Enforcement Purposes.**

To establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (*quoting Jefferson v. Dep't of Just.,* 284 F.3d 172, 177 (D.C. Cir. 2002). A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (*citing Campbell v. Dep't of Just*., 164 F.3d 20, 32 (D.C. Cir. 1998)). Further, where, as here, "the agency's principal function is law enforcement, courts are 'more deferential' to the agency's claimed purpose for the particular records." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (*quoting Tax Analyst v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002)).

The audio and video that Plaintiff seeks, if it exists, would have been created for law enforcement purposes thus satisfying the Exemption 7 threshold. The FBI is the primary

investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States. Napier Decl. ¶ 11. "Because the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell*, 164 F.3d at 32. Plaintiff seeks any audio or video recordings of undercover FBI agents' alleged meeting with Homan in Texas on or about September 20, 2024. Napier Decl. ¶ 5. If these recordings existed then they would have been compiled for law enforcement purposes because they would necessarily have been collected and maintained by the FBI as part of its law enforcement mission. *Id.* ¶ 12. Thus, any recordings would readily meet the threshold requirement of Exemption 7. *Id.*

### C. The FBI Appropriately Refused to Confirm or Deny the Existence of Any Recordings Under Exemptions 6 and 7(C).

The FBI properly responded to the FIOA request by neither confirming nor denying the existence of any responsive recording to protect Homan's privacy under Exemptions 6 and 7(C). The FBI has already established that any responsive records would have been compiled for law enforcement purposes. Because the "standard for evaluating a threatened invasion of privacy interests" under Exemption 7(C), "is somewhat broader than the standard" under Exemption 6, *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989), the Court does not need to evaluate the withholdings separately under Exemption 6. *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). Any information exempt from disclosure under Exemption 7(C) would also be exempt under Exemption 6. *Id.*

"In order to trigger the balancing of public interests against private interests, a FOIA requestor must (1) 'show that the public interest sought to be advanced is a significant one, an

interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'" *Boyd v. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Favish*, 541 U.S. at 172). Courts have construed the public interest component narrowly, noting that the public interest "must be assessed in light of FOIA's central purpose," and that purpose "is not fostered by disclosure about private individuals that is accumulated in various government files but that reveals little or nothing about an agency's conduct." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to." *Davis*, 968 F.2d at 1282 (quoting *Favish*, 489 U.S. at 773). Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7(C). *Blanton v. U.S. Dep't of Justice*, 63 F. Supp. 2d 35, 41 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at 1282); *cf. SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (public interest in disclosure of third party identities is "insubstantial"). In the absence of any evidence that the government agency has engaged in illegal activity, information that interferes with a third party's privacy is exempt from disclosure. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998); *Voinche v. FBI*, 46 F. Supp. 2d 26, 33 (D.D.C. 1999).

To be sure, "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *CREW v. Dep't of Just*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) (quoting *Nation Magazine*, 71 F.3d at 894)). That privacy interest is diminished by that individual's "well-publicized announcement" of such investigation. *Id*. at 1092. But although the individual's public acknowledgement may lessen "his

interest in keeping secret the *fact* that he was under investigation," the individual retains "a second, distinct privacy interest in the contents of the investigative files." *Id.*

The FBI has never acknowledged whether the audio or video that Plaintiff seeks exists, and to protect Homan's privacy the FBI has declined to confirm or deny whether it has audio or video of an alleged meeting between Homan and undercover FBI agents in response to Plaintiff's FOIA request. Napier Decl. ¶ 24. In circumstances, like here, where a FOIA requester seeks third-party records, the FBI first confirms whether proof of death or a privacy waiver has been provided. *Id*. ¶ 23. Homan's life status is not in question and Plaintiff has failed to provide a privacy waiver. *Id*. Absent proof of death or a privacy waiver, the FBI will not confirm or deny the existence or non-existence of law enforcement records pertaining to a third party unless the requester has established a significant public interest in disclosure that outweighs the third party's privacy interests. *Id.* ¶ 19. The FBI has conducted that balancing test and determined that Homan's privacy interest outweighed any public interest in disclosure. *Id*. ¶ 24.

The FBI determined that Homan has a strong privacy interest in not being associated with a law enforcement investigation. *Id*. ¶ 19. "Any such association can engender comment, speculation, or harassment; can be embarrassing and stigmatizing." *Id*. It is well established that third parties have a privacy interest in not having their association with a law enforcement investigation publicly disclosed. See *Elec. Priv. Info. Ctr. v. Dep't of Just*., 18 F.4th 712, 720 (D.C. Cir. 2021) (concluding that "individuals purportedly investigated for false statements . . . retain a significant privacy interest in the contents of the . . . Report because the redacted sections include new facts that would be stigmatizing"); *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) ("the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."). Privacy-based *Glomar* responses are upheld

- 9 -

in situations, like here, where a request seeks information about a third-party's alleged interactions with the government, particularly a law enforcement agency. *CREW v. Dep't of Just.*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) ("If a FOIA request is made for [an agency's] investigative records regarding a particular individual, the [agency]'s mere acknowledgment that it possesses responsive records associates the individual named in the request with suspected criminal activity and therefore a Glomar response may be appropriate.").

To the extent there is any public interest in whether the audio or video that Plaintiff seeks exists, that public interest is not significant enough to outweigh Homan's privacy interests. Although the FBI has acknowledged that there was an investigation regarding Homan that was closed, the FBI never disclosed the nature or extent of any investigation, what Homan's role in any investigation was (i.e. as a target, subject, witness etc.), or even what the investigation was for. Napier Decl. ¶ 22. The FBI most certainly did not acknowledge whether the video or audio that Plaintiff described in its FOIA request exists. *Id.* "Even the mere acknowledgement of the existence of records relating to criminal investigations (let alone their contents) can constitute an invasion of privacy.*" Bartko v. Dep't of Just*, 79 F. Supp. 3d 167, 173 (D.D.C. 2015). Crucially, Homan was never charged with any crime "The privacy interest is strongest where the individuals in question 'have been investigated but never publicly charged.'" *Id.* (quoting *ACLU v. Dep't of Just.*, 655 F.3d 1, 7 (D.C. Cir. 2011)).

Here, the existence or non-existence of the video or audio recordings that Plaintiff requests has not been acknowledged and Homan has a strong privacy interest in keeping the existence (or non-existence) of such records confidential. Napier Decl. ¶ 22. The fact that Homan is now a public figure does not change the analysis because Courts have declined to find that a public figure has a diminished privacy interest in aspects of his or life that are not publicly known, and Homan

- 10 -

was not a public figure in any event at the time in question. *See e.g., Heritage Found. v. Dep't of Homeland Sec.*, 754 F. Supp. 3d 73, 76-79 (D.D.C. 2024) (upholding a privacy *Glomar* response for immigration records regarding Prince Harry, the Duke of Sussex, because the Duke "has a reasonable privacy interest in his immigration records not known to the public"); *Prop of the People v. Dep't of Just.*, 310 F. Supp. 3d 57, 69-70 (D.D.C. 2018) (upholding a privacy *Glomar* response for FBI records regarding President Donald Trump because the President "retained a privacy interest in whether his name appears in investigative records from 1946 to 2015"); *see also Hunt v. U.S. Marine Corps*, 935 F. Supp. 46, 54 (D.D.C. 1996) (finding that senatorial candidate has unquestionable privacy interest in their military service personnel records and medical records). Here, whether Homan ever encountered or was investigated by undercover FBI agents as described in the complaint is not publicly known. Napier Decl. ¶ 22.

Moreover, "unless a FOIA request advances the citizens' right to be informed about what the government is up to, no relevant public interest is at issue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002). To assert a public interest in law enforcement records regarding a third party like Homan, Plaintiffs would need to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish,* 541 U.S. at 174. Here, Plaintiff has attempted to assert a public interest in learning about the investigation regarding Homan. Napier Decl. ¶ 23. But the fact that the investigation is closed does not show government impropriety because Plaintiff does not know what the investigation was for or the reasons the investigation was closed and simply speculates about nefarious motives for closing the investigation. *Id.* "Allegations of government misconduct are 'easy to allege and hard to disprove,' so courts must insist on a meaningful evidentiary showing." *Favish*, 541 U.S. at 175 (*quoting, Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)). Courts afford government records

and official conduct a presumption of legitimacy, *Ray*, 502 U.S. at 179, and Plaintiff's speculation about how the government handled an investigation involving Homan amounts to "bare suspicion" of government misconduct that does not undermine the presumption of legitimacy. *Favish*, 541 U.S. at 174.

Further, Plaintiffs seek records regarding one alleged encounter with undercover FBI agents. Courts have recognized that there is a minimal amount of information of interest to the public in a single incident or investigation, and any such marginal public interest does not overcome a third-party individual's privacy interests. *See e.g., Burton v. Wolf,* 803 F. App'x 120, 122 (9th Cir. 2020) (finding that "disclosure of personal information in an isolated case" would not advance FOIA public interest); *Heritage Found.,* 754 F. Supp. 3d. at 80 ("Public disclosure of records about a single admission of a foreign national in the circumstances described above would provide the public, at best, limited information about the Department's general policy in admitting aliens"); *Salas v. Off. of Inspector Gen*., 577 F. Supp. 2d 105, 112 (D.D.C. 2008) (upholding redactions of personally identifying information about Border Patrol employees mentioned in investigative records, concluding that "[t]his one incident, . . . , is not one of such magnitude that it outweighs the agency employees' substantial privacy interest").

Homan maintains a privacy interest in any records concerning his interactions with the FBI and this privacy interest is greater than any public interest in disclosure. Napier Decl. ¶ 24. The FBI has also established the foreseeable harm that would occur if the FBI were to even acknowledge whether the audio or video Plaintiff seeks exists. Specifically, releasing this information would draw negative and unwanted attention to Homan, subject him to harassing inquiries, or otherwise stigmatize and adversely affect him. *Id*. Courts have found similar explanations sufficient to uphold a law enforcement agency's explanation of foreseeable harm in

withholding information about a third party in law enforcement records under the privacy exemptions. *Ezeah v. FBI*, Civ. A. No. 24-0076 (TNM), 2025 U.S. Dist. LEXIS 158961, at *13 (D.D.C. Aug. 15, 2025) (finding an explanation that "Investigative targets would experience a 'negative stigma[]' with 'professional and social repercussions' establishes foreseeable harm.); *Kendrick v. FBI*, Civ. A. No. 20-2900 (TNM), 2022 U.S. Dist. LEXIS 175454, at *15-16 (D.D.C. Sept. 28, 2022) (finding an explanation of "harassment, potential reprisal, derogatory inferences, and suspicion" from releasing the information establishes foreseeable harm).

## II.    The FBI's Glomar Response Pursuant to Exemption 7(E) was Proper.

Even if the Court is not persuaded that the FBI's *Glomar* response was proper under Exemptions 6 and 7(C), the FBI appropriately issued a *Glomar* response to protect information about law enforcement techniques under Exemption 7(E). Napier Decl. ¶ 26. "Exemption 7(E) allows agencies to withhold records when release would 'disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" *Kowal v. Dep't of Just.*, 107 F.4th 1018, 1032-33 (D.C. Cir. 2024) (quoting 5 U.S.C. § 552(b)(7)(E)). "To justify withholding under Exemption 7(E), an agency must clear only a 'low bar' by 'demonstrat[ing] logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* at 1033 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (alterations in original).

The FBI "easily clear[s]" the "low bar" to "justify withholding under Exemption 7(E)" because the FBI explained "how the information withheld could aid criminal elements." *Kowal*, 107 4th at 1033. Specifically, "acknowledging or denying the existence or nonexistence of the law enforcement records that Plaintiff seeks here"—video and audio recordings of an alleged undercover FBI operation —"would be tantamount to confirming or denying whether or not the

- 13 -

FBI employed a specific surveillance technique which resulted in the collection and dissemination of information against particular individuals." Napier Decl. ¶ 26. Disclosing the existence of any audio or video would reveal "when and under what circumstances the FBI relies upon this law enforcement technique." *Id*. Criminals could use this information to gain insights "into the activities likely to attract—or not attract—the FBI's attention" and adjust their behavior accordingly to avoid FBI attention. *Id.* In other words, even if the public is generally familiar with a particular surveillance technique, the specific information at issue in this case—whether or not such a technique was used—is being withheld because the information "would reveal facts about such techniques or their usefulness that are not generally known to the public," and the information "could reduce the effectiveness of such techniques." *Broward Bulldog, Inc. v. Dep't of Just.,* 939 F.3d 1164, 1191 (11th Cir. 2019); *Soghoian v. Dep't of Just.*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (protecting electronic surveillance techniques under Exemption 7(E) because release of information showing what information is collected during surveillance, how it is collected, and when it is not collected could allow criminals to evade detection). Accordingly, the FBI has met its "burden to explain how disclosure of the information could reasonably be expected to risk circumvention of the law under Exemption 7(E)." *Kowal*, 107 F.4th at 103.

*     *     *

- 14 -

**CONCLUSION**

For these reasons, the Court should grant summary judgment in Defendant's favor.

Dated: April 6, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/ John J. Bardo*_____
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*

- 15 -