IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION,

*PLAINTIFF*,

V.

UNITED STATES DEPARTMENT OF
JUSTICE AND FEDERAL BUREAU OF
INVESTIGATION,

*DEFENDANTS*.

CIVIL ACTION NO. 1:25-CV-3559 (TJK)

**DECLARATION OF AMIE MARIE NAPIER**

I, Amie Marie Napier, declare as follows:

1. I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division, Federal Bureau of Investigation (FBI), located in Winchester, Virginia. I joined the FBI in April 2009, and prior to my current position, I was the Unit Chief of the Office of Internal Auditing's National Security Unit from July 2024 until September 2025; a Unit Chief, Acting Assistant Section Chief, and Acting Section Chief in the Information Technology Infrastructure Division from February 2020 to July 2024; an Auditor, Unit Chief, Assistant Section Chief, and Acting Section Chief in the Training Division from July 2012 to February 2020; an Auditor and Division Compliance Officer in the Security Division from September 2010 to July 2012; and an Auditor and Compliance Team Lead in the Threat Screening Center from April 2009 to September 2010. Prior to joining the FBI, I served as an

1

Auditor with the Department of Defense's Office of Inspector General from September 2003 to April 2009.

2.    In my official capacity as Section Chief of RIDS, I supervise approximately 212 FBI employees, supported by approximately 92 contractors, who staff a total of eight Federal Bureau of Investigation Headquarters units and two field operational service center units. RIDS' collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, including information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.    Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act of 1974. Specifically, I am familiar with the FBI's handling of Plaintiff's FOIA requests that are the subject of this litigation.

4.    The FBI submits this declaration in support of Defendants' Motion for Summary Judgment. Part I of this declaration provides the Court with a summary of the administrative history of Plaintiff's requests. Part II provides the FBI's justification for neither confirming nor

2

denying the existence of alleged records responsive to Plaintiff's requests pursuant to FOIA

Exemptions 6, 7(C) and 7(E), 5 U.S.C. § 522(b)(6), (b)(7)(C) and (b)(7)(E).[1]

## PART 1: ADMINISTRATIVE HISTORY

### FBI FOIPA REQUEST NUMBER 1684286-000

5.       By electronic FOIA (eFOIPA)[2] dated September 22, 2025, Plaintiff submitted two

(2) separate FOIA requests to the FBI. The first request sought:

> The video recording of the meeting on or around September 20, 2024 in Texas
> between undercover FBI agents and Tom Homan.

The second request sought:

> Any recording (either video or audio) of the meeting on or around September 20,
> 2024 in Texas between undercover FBI agents and Tom Homan.

Plaintiff further requested a waiver of all search and duplication fees associated with processing

its requests. To justify Plaintiff's waiver requests it advised in both requests that:

> Democracy Forward Foundation has a demonstrated ability to disseminate
> information of public interest requested through freedom of information statutes,
> and based upon responses to this request may assist in publicizing records
> received to contribute to the public's understanding of the closed case against
> "Border Czar" Tom Homan and his acceptance of bribes relating to his potential
> role in the Trump administration pending the results of the election. The records
> sought will also show the extent of an agency official taking funds in order to
> potentially direct government contracts to specific groups. Indeed, records
> received by Democracy Forward Foundation have previously formed the basis of
> news reports.
>
> Democracy Forward Foundation is not filing this request to further any
> commercial interest, and any information obtained by Democracy Forward
> Foundation as a result of this request and disclosed will be disclosed at no cost.
>
> If the request for a fee waiver is denied, we are willing to pay all reasonable fees
> incurred for searching and duplicating records in responding to this request, up to

---

[1] In addition to relying on FOIA Exemptions 6 and 7(C) for its *Glomar* response, the FBI has also determined that it relies upon FOIA Exemption 7(E).
[2] An eFOIPA is an electronic means by which requesters can submit FOIA or Privacy Act requests to the FBI, online, through the FBI's public website, www.FBI.gov.

$50. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

(Exs. A. and B.)

6.    By a separate letter dated September 25, 2025, Plaintiff requested that its September 22, 2025, requests be granted expedited processing. To justify Plaintiff's request for expedited processing it stated:

> The requests concern a "matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity that affect public confidence," see 28 C.F.R. § 16.5(e)(1)(iv).

Plaintiff further advised:

> To qualify for expedited processing under 28 C.F.R. § 16.5(e)(1)(iv), the Department of Justice has interpreted subsection (iv) to require that "the same matter that draws widespread and exceptional media interest must be the matter in which there exists possible questions about the government's integrity that affect public confidence." *Am. Oversight v. U.S. Dep't of Just.*, 292 F. Supp. 3d 501, 506 (D.D.C. 2018). DFF's instant FOIA requests satisfy both criteria.

> The focus of DFF's FOIA requests-the widely discussed investigation records that relate to the Tom Homan matter-has garnered extraordinary attention from the American public, Congress and the press since it came to light only a few days ago.

> The DOJ and the FBI have recently officially acknowledged that it closed an investigation into "Border Czar" Tom Homan. After MSNBC, on September 20, 2025, reported that the FBI during an "undercover operation last year, … recorded Tom Homan, now the White House border czar, accepting $50,000 in cash after indicating he could help the agents – who were posing as business executives – win government contracts in a second Trump administration." The investigation had come out of a larger counterintelligence investigation that had not specifically targeted Homan. The government did not charge him at the time in order to see if he would grant the contracts once he was in office. However, the investigation stalled and was officially closed shortly after the new administration began this year. Reporting has indicated that then Acting Deputy Attorney General Emil Bove, was briefed on the matter and had told DOJ officials that he did not support the investigation. Ultimately, according to a statement put out by Director Patel and Deputy Director Blanche, "a full review by FBI agents and Justice Department prosecutors" took place. Reporting also noted that then Deputy Attorney General Emil Bove had been briefed on the subject.

The above sampling of media reports clearly demonstrates that this issue has attracted widespread and exception media interest, highlighting the pressing need for expedited processing of DFF's related FOIA requests.

Moreover, the widespread media reporting on the government's handling of the Homan matter implicates multiple questions about the government's integrity, including whether:

1) The Trump administration is being truthful as to the reason the case was dropped given there is reporting on evidence that would contradict its stance on the matter and would tend to incriminate a senior White House official empowered to direct the nation's immigration policy.
2) The Trump administration's engagement in this matter presents conflicts of interest? There is concern that the administration is looking to shield an administration official from legal consequences as it actively goes after its own opponents, which raises concerns as to why the investigation was dropped.
3) Most obviously, there are concerns in all reporting about a government official serving in such a senior position after potentially accepting money in exchange for using his potential future influence in government for private, rather than public, benefit.

The government's actions have plainly sparked concerns that affect the public's confidence in the government's handling of this matter because of questions above concerning the government's integrity have been posed in media reports mentioned in this explanation request. Members of Congress from both chambers have also raised concerns about the government's integrity on this matter. Democrats on the House Judiciary Committee have sent a letter to the DOJ and the FBI demanding Attorney General Bondi and Director Patel provide records, materials and communications relating to the matter. In the Senate, Democrats on the Judiciary Committee sent letters to Bondi, Patel and Deputy Director Blanche seeking information on the matter. All of the above highlights the considerable concern about government integrity and that further scrutiny is expected.

In sum, the release of federal records related to this matter are of critical importance. The American public desires to know more about the matter and the Administration's actions regarding it. Especially if it has deliberately attempted to mislead the American public. Given the compelling need for disclosing such information, Democracy Forward Foundation seeks expedited processing for our requests submitted on September 23, 2025.

All footnotes to news articles are omitted but can be viewed in the letter itself. (Ex. C.)

7.      By letter dated September 30, 2025, the FBI acknowledged receipt of Plaintiff's

FOIA requests dated September 22, 2025, and notified Plaintiff it had assigned them FBI FOIPA

Request Number 1684286-000. The FBI also informed Plaintiff of the following:

    a.  Plaintiff submitted its request via the FBI's eFOIPA system,

        i.  the FBI determined it was compliant with the eFOIPA terms of service, and future correspondence about the request would be provided electronically;

    b.  Plaintiff's request for a public interest fee waiver was under consideration, and Plaintiff would be advised of the decision at a later date, and if Plaintiff's fee waiver was not granted, Plaintiff would be responsible for applicable fees; and for the purpose of assessing any fees, the FBI determined as

        i.  as an education institution, noncommercial scientific institution or representative of the news media requester, Plaintiff would be charged applicable duplication fees.

Additionally, the FBI informed Plaintiff it could check the status of its requests and/or contact

the FBI with any questions at www.fbi.gov/foia. Furthermore, Plaintiff could appeal the FBI's

response to the DOJ, Office of Information Policy (OIP) within 90 days of its letter, contact the

FBI's public liaison and/or seek dispute resolution services by contacting the Office of

Government Information Services (OGIS). (Ex. D.)

8.      On October 6, 2025, Plaintiff filed a complaint in the U.S. District Court for the

District of Columbia. (ECF No. 1.)

9.      On October 22, 2025, Plaintiff filed its First Amended Complaint for Injunctive

Relief in the U.S. District Court for the District of Columbia. (ECF No. 5.)

10.     By letter dated December 2, 2025, the FBI denied Plaintiff's requests by issuing a *Glomar* response. Specifically, the FBI advised Plaintiff it would neither confirm nor deny the existence of the requested records pertaining to a third party pursuant to FOIA Exemptions (6) and (b)(7)(C) because the mere acknowledgement of the existence of FBI records could reasonably be expected to constitute an unwarranted invasion of this individual's personal privacy interest. The FBI informed Plaintiff that it could appeal the FBI's response to DOJ OIP, within 90 days of the letter, contact the FBI's public liaison, or seek dispute resolution services by contacting OGIS.[3] **(Ex. E.)**

## PART II:  THE FBI'S *GLOMAR* RESPONSE

### FOIA EXEMPTION 7 THRESHOLD

11.     Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further the foreign intelligence objectives of the United States.

---

[3] The term "*Glomar*" refers to the subject of a FOIA request submitted to the CIA. The requester sought information concerning a ship named the *Glomar Explorer* and the CIA refused to confirm or deny its knowledge of the *Glomar* vessel, because to do so would compromise the national security or divulge intelligence sources and methods. *Phillippi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981).

12.     Since it is the FBI's policy not to conduct a search for responsive records under *Glomar* circumstances, there is no specific statutory investigative authority for compiling the records to cite here. However, because Plaintiff seeks records pertaining to any alleged recording (either video or audio) of the meeting on or around September 20, 2024, in Texas between undercover FBI agents and Tom Homan, the types of records requested, should any exist, would necessarily have been collected and maintained by the FBI as part of its law enforcement mission and would readily meet the threshold requirement of Exemption 7.

13.     The FBI relies on a *Glomar* response in instances where, if responsive records existed, even acknowledging their existence would result in harm protected against by one or more FOIA exemptions. To be credible and effective, the FBI must use a *Glomar* response in all similar cases regardless of whether responsive records exist, including instances in which the FBI does not possess records responsive to a particular request. If the FBI were to invoke a *Glomar* response only when it actually possessed responsive records, then the *Glomar* response would be interpreted as an admission that responsive records exist.

14.     The FBI has determined that merely acknowledging the existence or non-existence of the alleged records of video and audio recordings responsive to Plaintiff's requests would trigger harm under FOIA Exemptions 6, 7(C), and 7(E), with respect to the requested third-party records of Tom Homan named in Plaintiff's requests.

15.     Pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI does not release information associating particular individuals with its law enforcement or intelligence activities. Pursuant to Exemption (b)(7)(E) the FBI does not release information about records or information compiled for law enforcement purposes when disclosure would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. The FBI also refuses to confirm or deny the existence of responsive records when doing so could provide these types of information.

### EXEMPTION 6 AND 7(C) *GLOMAR*

16.     The FOIA exempts from disclosure records related to third parties if release of the information could be expected to constitute an unwarranted invasion of personal privacy.

17.     Specifically, the FOIA provides that Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

18.     Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

*FBI Policy for Processing Requests for Third Party Records*

19.     The FBI's longstanding policy has been to provide an Exemption 6 and 7(C) *Glomar* response (hereinafter privacy *Glomar*),[4] neither confirming nor denying the existence or non-existence of law enforcement records, in those instances where an individual seeks access to

---

[4] 5 U.S.C. § 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Similarly, 5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard, and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions are sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

information regarding a third party, unless the requester establishes a significant public interest in disclosure that outweighs the third party's privacy interests. The FBI instituted this policy to protect the privacy rights of individuals, particularly those who appear in FBI law enforcement files. It is well-recognized that individuals have substantial privacy interests in relation to being associated with law enforcement investigations because any such association can engender comment, speculation, or harassment; can be embarrassing and stigmatizing; and can, in some circumstances, result in physical harm or threats of harm or death. Statements by an individual alluding to or acknowledging an association with a law enforcement investigation do not extinguish the privacy interests of the third party or constitute a waiver of the third party's privacy interests.

20.     If a requester establishes that disclosure would serve a public interest under the FOIA, then the FBI balances that public interest against the third party's privacy interests. This balancing is done on a case-by-case basis. The FBI will process a request for and release non-exempt law enforcement records about a third party only if it determines that a significant public interest outweighs that individual's privacy interests after conducting the balancing analysis.

21.     For purposes of Exemptions 6 and 7(C), a public interest exists when disclosure of information about an individual would significantly increase the public's understanding of FBI operations and activities. The balancing of interests under Exemptions 6 and 7(C) also considers the privacy interests of individuals implicated in a FOIA request. The balancing analysis in each case is necessarily fact specific. Thus, each request must be treated individually, and the FBI must retain flexibility in the way in which it handles each request.

22.     Here, while the existence of the FBI's investigation of third-party subjects of investigative interest and the closing of this investigation has been officially acknowledged, the

10

existence or non-existence of the alleged records of video and audio recordings, responsive to Plaintiff's requests, herein, has not been officially acknowledged.

23.     Plaintiff did not submit: 1) a privacy waiver from Tom Homan; 2) proof of death as described in the regulation at 28 C.F.R. § 16.3(a); or 3) demonstrated a significant public interest in disclosure of the material sought. Further, Plaintiff contends in its requests that the alleged records requested would "contribute to the public's understanding of the closed case against 'Border Czar' Tom Homan and his acceptance of bribes relating to his potential role in the Trump administration pending the results of the election." Plaintiff also contends, "the records sought will also show the extent of an agency official taking funds in order to potentially direct government contracts to specific groups." If the existence or nonexistence of the alleged records of video and audio recordings requested by the Plaintiff herein were acknowledged, such acknowledgement would violate Tom Homan's privacy rights resulting in a clearly unwarranted invasion of personal privacy and could reasonably be expected to draw negative and unwanted attention to him; could subject him to harassing inquiries, and otherwise stigmatize and adversely affect him. Plaintiff  failed to provide sufficient information to articulate a public interest in disclosure under the FOIA. As such, the substantial privacy interests of this third-party individual outweigh any public interest in disclosure.

24.     In sum, Plaintiff provided no third-party waiver or proof of death for Tom Homan on whom he requested information. In addition, Plaintiff has not articulated a significant public interest in disclosure that would outweigh the substantial privacy interest of Tom Homan. Therefore, in response to Plaintiff's requests for records pertaining to any alleged recording (either video or audio) of the meeting on or around September 20, 2024 in Texas between undercover FBI agents and Tom Homan, the FBI asserted the privacy *Glomar* pursuant to FOIA

Exemptions 6 and 7(C). Finally, when the FBI asserts a privacy *Glomar*, it is policy not to conduct a search for responsive records because the nature of the requested records alone prohibits acknowledgement and disclosure.

### EXEMPTION 7(E) *GLOMAR*

25.     The FOIA exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it provides techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures.

26.     Acknowledging or denying the existence or non-existence of the alleged law enforcement records Plaintiff seeks would be tantamount to confirming or denying whether or not the FBI employed a specific surveillance technique at a particular period in time, which resulted in the collection and dissemination of information against particular individuals. In addition, acknowledging when and under what circumstances the FBI relies upon this law enforcement technique would provide targets and other criminals with insight into the activities likely to attract—or not attract—the FBI's attention and aid in circumvention of the law by providing criminals the information necessary for them to adjust their behavior in order to avoid detection by law enforcement. Therefore, the FBI properly asserted a *Glomar* response pursuant to Exemption 7(E).

**FORESEEABLE HARM**

27.     The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Here, the foreseeable harm under Exemptions 6 and 7(C) is to the personal privacy of an individual and tied to the disclosure of the existence or non-existence of records pertaining to any alleged recording (either video or audio) of the meeting on or around September 20, 2024, in Texas between undercover FBI agents and Tom Homan. In addition, the foreseeable harm under Exemption 7(E) is to the identity of public or non-public law enforcement techniques and procedures the FBI uses to collect and analyze information (specifically, the who, when, where, what and how) in criminal investigations that would confirm the existence or non-existence records pertaining to any alleged recording (either video or audio) of the meeting on or around September 20, 2024, in Texas between undercover FBI agents and Tom Homan. In response to the requests at issue here, the FBI determined that foreseeable harm to the privacy interests of the third party and to the FBI's law enforcement techniques and procedures it uses to collect and analyze information would result if the FBI were to disclose the existence or non-existence of records.

**CONCLUSION**

28.     In reviewing Plaintiff's requests, the FBI determined it could neither confirm nor deny whether it possesses the alleged records responsive to Plaintiff's requests, pursuant to FOIA Exemptions 6, 7(C) and 7(E), because merely confirming or denying the existence of such records would cause a clearly unwarranted invasion of the personal privacy, or could reasonably

be expected to constitute an unwarranted invasion of personal privacy; and would disclose

techniques and procedures for law enforcement investigations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A-E attached hereto are true and correct copies.

AMIE NAPIER
Digitally signed by AMIE NAPIER
Date: 2026.04.06 15:15:29 -04'00'

_____
Amie Marie Napier
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

15